[Cite as *State v. King*, 2024-Ohio-5347.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30111 |
| | : | |
| v. | : | Trial Court Case No. 2023 CR 00613 |
| | : | |
| AMANDA SUE KING | : | (Criminal Appeal from Common Pleas Court) |
| | : | |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 8, 2024

. . . . . . . . . . .

JOHNNA M. SHIA, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Amanda Sue King appeals from her conviction in the Montgomery County Court of Common Pleas for aggravated vehicular homicide, in violation of R.C. 2903.06(A)(2)(a), a third-degree felony. She claims that her maximum 60-month prison

sentence was contrary to law. For the following reasons, the trial court's judgment will be affirmed.

## I. Facts and Procedural History

{¶ 2} In April 2023, King was indicted for aggravated vehicular homicide based on her having caused the death of another through the reckless operation of her vehicle on October 21, 2022. The 72-year-old victim was killed when King hit her vehicle while traveling over 90 miles per hour in a 35 mile per hour zone.

{¶ 3} King pled not guilty by reason of insanity (NGRI) and, after a competency evaluation, she was found to be incompetent to stand trial. After she was restored to competency, the court ordered a sanity evaluation related to the NGRI plea, which was completed.

{¶ 4} On March 19, 2024, King pled guilty to the aggravated vehicular homicide, as well as two unrelated charges in two other cases – Montgomery C.P. Nos. 2023 CR 566 (aggravated possession of drugs) and 2023 CR 1187 (harassment by an inmate – bodily substance). The trial court accepted King's pleas and ordered a presentence investigation. Defense counsel submitted a sentencing memorandum, which detailed King's severe mental health issues around the time of the offense, other challenges that King had faced, her improved mental health following treatment, and her deep remorse for the fatal car crash. King also sent an apology letter to the court.

{¶ 5} On April 11, 2024, the trial court held a sentencing hearing for the aggravated vehicular homicide case and King's two other pending cases. After hearing from defense counsel and the crash victim's son and daughter, the trial court reviewed the relevant

sentencing statutes. The court indicated that, in sentencing King, it must be guided by the purposes of felony sentencing in R.C. 2929.11, and it explained what those were.

{¶ 6} Next, the court explained that it must consider the seriousness and recidivism factors in R.C. 2929.12. It found King's conduct was more serious because the victim suffered serious physical harm (in this case, death), and no factors indicated the conduct was less serious. The court also found three factors indicating that recidivism was more likely: (1) King was under supervision through pretrial services when the offense occurred, (2) King had been on probation for other criminal offenses, and (3) King demonstrated a pattern of drug or alcohol abuse that was related to the offense and she refused to acknowledge that pattern or refused treatment. As to factors indicating that King was less likely to commit future crimes, the trial court noted that King did not have any juvenile adjudications and she showed genuine remorse for causing the victim's death.

{¶ 7} The trial court continued:

This case that the Court has currently before it is a terrible, awful, and tragic case. A 72-year-old mother was senselessly and tragically killed and suddenly taken from her family without any opportunity for them to say goodbye . . . , leaving them obviously heartbroken and grief stricken as we've seen here today. Ms. White did not stand a chance against a car that was speeding over 90 miles an hour in a 35 mile per hour zone.

This is every person's worst nightmare. Minding your own business, obeying traffic laws, when someone needlessly and senselessly breaks the law and crashes into you unsuspectingly, leaving you no chance

whatsoever to save yourself from a speeding deadly weapon. Ms. White's family did not deserve the pain that they're suffering through right now losing their mother. And Ms. White did not deserve to die that day.

On the other side of this coin, I have in front of me a person with a documented severe mental illness who fell through the cracks and did not receive the adequate treatment through hospitalization and medication through our community that she so desperately needed. This situation casted a long dark shadow on the plight of the mentally ill in our society and how ill-equipped our society is to provide the appropriate assistance so desperately needed to help those with severe mental illness. And to protect innocent people like Ms. White from those in a state of a mental health crisis.

The Amanda King standing in front of me today is the exact opposite of the Amanda King who was in front of me for so many months in this case. The Amanda King that was in front of me earlier was gripped by severe mental disease and an illness that did not allow her to think clearly or appreciate her accidents or even assist in her own defense. The Amanda King in front of me today is clear headed, polite, and has a deep appreciation and understanding for the severity of her crime and has shown this Court the deep remorse she has for the death of Ms. White.

And I would like to read the letter that I received from Ms. King. Where she says, dear Judge Montgomery and the family of Hattie White, I

am sincerely remorseful for the loss of Ms. Hattie White. I know she was a mother and a grandmother and is missed dearly by her loved ones. There are no words or actions that will make everything okay, but my deepest condolences go out to the family of Ms. White. I know how important a grandmother is to a family, so I know Ms. White is the key that holds the family together and the loss of her is unbearable pain.

Please don't hold this against me. I'm not a bad person. I was once an honor student in high school, and I didn't deliberately crash. I ask that everyone in the courtroom have mercy on me. I am truly and deeply sorry for this traumatic loss that this family is experiencing. And I cannot stress enough how sorry I am about this loss. Please find forgiveness in your heart.

{¶ 8} The trial court imposed the maximum sentence of 60 months in prison for the aggravated vehicular homicide, to be served concurrently with 12-month sentences in the two other cases. The court also suspended King's driver's license for ten years.

{¶ 9} King appeals from her conviction, challenging the 60-month prison sentence.

## II. Review of King's 60-Month Sentence

{¶ 10} In her sole assignment of error, King claims that "the record does not support the trial court's maximum sentence by clear and convincing evidence and is, therefore, contrary to law." She asserts that a sentence of community control would have been more appropriate.

{¶ 11} In reviewing felony sentences, appellate courts must apply the standard of

review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 2016-Ohio-1002, ¶ 9. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2017-Ohio-4097, ¶ 6 (2d Dist.).

{¶ 12} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King*, 2013-Ohio-2021, ¶ 45 (2d Dist.). "It is enough that the record demonstrates that the trial court considered R.C. 2929.11 and R.C. 2929.12 prior to imposing its sentence." *State v. Trent*, 2021-Ohio-3698, ¶ 15 (2d Dist.). "A sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12." (Citation omitted.) *State v. Brown*, 2017-Ohio-8416, ¶ 74 (2d Dist.).

{¶ 13} R.C. 2929.11 requires trial courts to be guided by the overriding purposes of felony sentencing. Those purposes are threefold: "to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). "[A] sentencing court may place such weight on each of the purposes as the circumstances of the case require." *State v. Bittner*,

2019-Ohio-3834, ¶ 18 (12 Dist.).

{¶ 14} R.C. 2929.12(B) sets forth nine factors indicating that an offender's conduct is more serious than conduct normally constituting the offense; R.C. 2929.12(C) sets forth four factors indicating that an offender's conduct is less serious than conduct normally constituting the offense. R.C. 2929.12(D) and (E) each lists five factors that trial courts are to consider regarding the offender's likelihood of committing future crimes. For each of these categories, the trial court may also consider "any other relevant factors." Finally, R.C. 2929.12(F) requires the sentencing court to consider the offender's military service record, if any, and whether the offender has a condition traceable to that service that contributed to the commission of the offense.

{¶ 15} The Ohio Supreme Court has stated that R.C. 2953.08(G)(2)(b) "does not provide a basis for an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Jones*, 2020-Ohio-6729, ¶ 39. Accordingly, "[w]hen reviewing felony sentences that are imposed *solely* after considering the factors in R.C. 2929.11 and R.C. 2929.12, we do not analyze whether those sentences are unsupported by the record." (Emphasis added.) *State v. McDaniel*, 2021-Ohio-1519, ¶ 11 (2d Dist.), citing *State v. Dorsey*, 2021-Ohio-76, ¶ 18 (2d Dist.); *Jones* at ¶ 26-29.

{¶ 16} However, *Jones* does not preclude claims that a sentence was imposed based on impermissible considerations, namely considerations that fall outside of R.C. 2929.11 and R.C. 2929.12. *State v. Bryant*, 2022-Ohio-1878 (the trial court impermissibly increased the defendant's sentence following his angry, profanity-laced in-court tirade

after the announcement of his sentence.) "[W]hen a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Id.* at ¶ 22.

**{¶ 17}** In this case, King does not assert that her 60-month sentence for aggravated vehicular homicide was outside the statutory range. The record further reflects that the trial court complied with its obligations under R.C. 2929.11 and R.C. 2929.12. Accordingly, we may not independently "weigh the evidence in the record and substitute [our] judgment for that of the trial court concerning the sentence that best reflects compliance with R.C. 2929.11 and 2929.12." *Jones* at ¶ 42.

**{¶ 18}** In her appellate brief, King acknowledges that *Jones* generally precludes her argument. She expresses her belief that *Jones* reflects an unconstitutional restriction on appellate review, and she states that she has raised her argument to preserve it. King further asserts that the record clearly and convincingly does not support the trial court's conclusion that her history of drug abuse (which she does not contest) was related to the offense. However, this argument amounts to a contention that the sentence is not supported by the record, an argument that *Jones* precludes. Nevertheless, we note that King was sentenced on three offenses at the sentencing hearing, including a charge of aggravated possession of drugs. The trial court may have referenced the history-of-drug-abuse factor in relation to that other offense.

**{¶ 19}** King's assignment of error is overruled.

### III. Conclusion

**{¶ 20}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and HUFFMAN, J., concur.